Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW S., <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> **Defendant.** | Civil Action No. 18-17212 (ES) <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Andrew S. appeals the decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1). For the reasons discussed below, the Court VACATES and REMANDS the decision of the Commissioner.

**I.  BACKGROUND**

On December 30, 2014, Plaintiff filed an application for DIB. (D.E. No. 11, Administrative Record ("R.") 12 & 176). He claimed disability as a result of rheumatoid arthritis, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). (R. 212). Though it is not clear when or how, Plaintiff later claimed he suffered from affective disorders and sarcoidosis. (R. 15). Plaintiff's application was denied initially and on reconsideration. (R. 12, 104–08 & 113–15). On January 19, 2017, an Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff and a vocational expert testified. (R. 31–76).

On October 30, 2017, the ALJ denied Plaintiff's application for DIB. (R. 9–25). The ALJ ruled that Plaintiff's impairments did not meet or medically equal a listed impairment that would

automatically render him disabled, and that Plaintiff has the residual functional capacity ("RFC") to perform work for which there exists a significant number of jobs in the national economy. (R. 15–23). More specifically, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a); except the claimant can sit for six hours in an eight hour day, taking short breaks of up to five minutes per hour to stand or change position, and can stand and/or walk for two hours; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb ramps and stairs; never crawl; occasionally stoop and crouch; and is able to do only simple and repetitive tasks.

(R. 17). Relying on the vocational expert's testimony, the ALJ found that an individual with the above RFC could perform work as a bench assembly worker; a final assembler; and a polisher, eye glass frames. (R. 24). On November 13, 2018, the Appeals Council denied Plaintiff's request for review. (R. 1–5). Plaintiff then filed the instant appeal, which the court has subject-matter jurisdiction to decide under 42 U.S.C. §§ 1383(c)(3) and 405(g).

## II.   LEGAL STANDARD

### A.   Standard Governing Benefits

To receive DIB, a claimant must show that he is "disabled" within the meaning of the Act. 42 U.S.C. § 1382(a). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." § 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ."

*Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four," and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2. If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4).

**Step One**. First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b).

**Step Two**. Second, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured ("DLI"). 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

**Step Three**. Third, the claimant may show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant makes such a showing, he is presumptively disabled and entitled to benefits. If he

3

does not make the showing, he proceeds to step four.

***Step Four***. Fourth, the claimant must show that, as of the DLI, he lacked the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If as of the DLI the claimant lacked the RFC to perform his past relevant work, the analysis proceeds. *See, e.g.*, *Plummer*, 186 F.3d at 429.

***Step Five***. Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner finds that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See id.*

**B.    Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). But the "findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154. And although substantial evidence requires "more than a mere scintilla, it need not

4

rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

## III. DISCUSSION

Plaintiff assigns several errors to the ALJ's decision. (D.E. No. 18 ("Mov. Br.")). The Commissioner opposes each. (D.E. No. 19 ("Opp. Br.") at 10). Because the Court agrees that the ALJ erred at step three of the sequential analysis, the Court will not consider the other arguments with respect to steps four and five. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x. 155, 156–57 (3d Cir. 2008) ("Inasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach Vivaritas' other challenges to the ALJ's decision."); *Coleman v. Comm'r of Soc. Sec.*, No. 15-8839, 2019 WL 1594269, at *5 (D.N.J. Apr. 15, 2019) ("Because the Court agrees and finds that ALJ Dunn erred when conducting her Step Two and Step Three analysis, the Court will vacate the Commissioner's decision and will remand for further proceedings. Therefore, the Court does not address Plaintiff's other arguments for remand.").[1]

---

[1] Because the ALJ ultimately found for Plaintiff at step two, any error here there would be harmless. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))). Indeed, "[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "As long as an ALJ finds at least one impairment to be severe, the ALJ considers all of a claimant's impairments in combination—severe and non-severe—at step three." *Figueroa v. Comm'r of Soc. Sec.*, No. 17-8239, 2018 WL 6918869, at *3 (D.N.J. Dec. 28, 2018).

At step three, the ALJ found that Plaintiff does not suffer from an impairment, or combination of impairments, that meets or medically equals the severity of a listing. (R. 15). To that end, the ALJ considered Listings 1.02, for "Major dysfunction of a joint(s)"; 12.04, for "Depressive, bipolar and related disorders"; 12.11, for "Neurodevelopmental disorders"; and 14.09, for "Inflammatory arthritis." (R. 15–17). Plaintiff argues that the ALJ erred with respect to Listings 12.04, 12.11, and 14.09. (Mov. Br. at 11–26). The Court agrees.

### A.     Listing 12.04: Depressive, Bipolar, and Related Disorders

A claimant is presumptively disabled under Listing 12.04 if he satisfies 12.04A and either 12.04B or 12.04C. The ALJ found that Plaintiff did not satisfy either 12.04B or 12.04C. Because that finding was dispositive, the ALJ did not consider whether Plaintiff satisfied 12.04A.[2] However, the ALJ erred in his analysis of 12.04B and 12.04C.

### *i.     12.04B*

To satisfy 12.04B, the claimant must have one extreme limitation or two marked limitations in the following domains:

> 1. Understand, remember, or apply information;
>
> 2. Interact with others;
>
> 3. Concentrate, persist, or maintain pace; and
>
> 4. Adapt or manage oneself.

For 12.04B1 and B3, the ALJ found that Plaintiff has a "moderate limitation" in each domain. (R. 16). And for 12.04B2 and B4, the ALJ found that Plaintiff has a "mild limitation" in each domain. (R. 16).

---

[2] As the Commissioner points out, and contrary to Plaintiff's suggestion, the ALJ's decision not to consider Listing 12.04A was entirely appropriate. (Opp. Br. at 17 (citing *Gantt v. Comm'r of Soc. Sec.*, 205 F. App'x 65, 66 (3d Cir. 2006); *Noah v. Comm'r of Soc. Sec. Admin*, No. 14-1723, 2014 WL 689006, at *6 (D.N.J. Dec. 4, 2014))).

Listing 12.00E outlines the considerations and examples of behavior that are relevant to the domains listed in 12.04B, and Plaintiff argues that the ALJ's analysis deviated from the considerations outlined in 12.00E. (Mov. Br. at 20–26).

With respect to the first three domains—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace—the Court disagrees with Plaintiff. Notably, Plaintiff does not explain how the ALJ's analysis of those domains was inconsistent with 12.00E. Moreover, the inconsistencies are not self-evident. For example, for interacting with others, the ALJ noted that Plaintiff indicated he is always respectful to authority figures and is able to shop at stores. (R. 16). Those considerations are not inconsistent with 12.00E2, which lists the claimant's ability to "cooperat[e] with others" as a relevant factor. In addition, while Plaintiff suggests that the ALJ did not cover *all* of the examples set out in 12.00E, 12.00E says "[w]e do not require documentation of all of the examples." The Court thus agrees with the Commissioner that the ALJ's analysis of the above three domains was appropriate. (Opp. Br. at 18–19).

However, the ALJ erred when assessing Plaintiff's ability to adapt or manage himself. In finding Plaintiff had only a "mild limitation" in that domain, the ALJ explained:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant alleged that he cannot handle stress or changes in routine at all. However, he indicated that he is able to go out alone. At the consultative examination, he reported helping to get his kids ready for school and walking them to school. The consultative examiner observed good insight and mildly impaired judgment. At many treating appointments, the clamant was found to have good insight and judgment. I find mild limitation in this domain.

(R. 16–17 (internal citations omitted)). Meanwhile, 12.00E4 calls for a different analysis:

> *Adapt or manage oneself (paragraph B4).* This area of mental functioning refers to the abilities to regulate emotions, control

> behavior, and maintain well-being **in a work setting**. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

(Emphasis added).

Plaintiffs' ability to care for his children is not so clearly probative of his ability "to regulate emotions, control behavior, and maintain well-being in"—specifically—"a work setting." The same is true of Plaintiffs' ability to go out alone. Nor is it clear how such factors undercut Plaintiff's claim he cannot handle adjustments to his routine. Plaintiff's routine would seem to include caring for his children and going out alone. Such acts do not appear to be deviations from his routine. The Commissioner commits the same error as the ALJ—by taking evidence of Plaintiff's at-home routine and imputing it, without explanation, into Plaintiff's ability to adapt and manage himself in a work setting. (Opp. Br. at 24).

The Third Circuit has explained:

> In *Smith v. Califano*, we held that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity . . . . It is well established that sporadic or transitory activity does not disprove disability." 637 F.2d 968, 971–72 (3d Cir. 1981). Nazario's activities of daily living took place in Nazario's home at her own pace. Just because Nazario was not "excluded from all forms of human and social activity" and engaged in "sporadic or transitory activity" does not mean that she is not disabled for work purposes. *Id.* Without more explanation as to how her activities *would translate to the workplace*, Nazario's daily in-home activities (especially activities like "listening to Christian music") are not substantial evidence that Nazario is

8

not disabled.

*Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019) (emphasis added).

The Court must remand for the ALJ to make specific findings of fact regarding Plaintiff's ability to adapt and manage himself *in a work setting*. Absent from the ALJ's opinion, in all of the steps, is any consideration of that factor.

Moreover, the above error is not harmless because a proper analysis *could* make a difference in this case. As Plaintiff points out, there is evidence in the record, if credited, that could support his contention that he suffers from an extreme limitation in adapting or managing himself in a work setting. (Mov. Br. at 25–26). An extreme limitation is one for which the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." Listing 12.00F2. Evidence in the record, if credited, could show a consistent pattern of behavior on the part of Plaintiff that shows he may not be able to "independently, appropriately, effectively, and on a sustained basis" adapt or manage himself in a work setting. For example, Plaintiff has not held substantial gainful employment in years. Moreover, Dr. David Gelber, whom the ALJ said is entitled to "some weight" (R. 22), reported that Plaintiff "began losing his temper frequently with his wife and then overspending on jewelry and gifts worrying that his wife would leave him"; was in and out of outpatient facilities; quit his job in 2014 "because he knew he was going to be fired"; gained over 100 pounds over the course of two years from overeating; "sleeps 14 hours per day"; "cries 3-4 times per week when . . . thinking about current stressors"; and has had "no close friends" in the preceding three years. (R. 333–336). On remand, the ALJ should determine whether this type of behavior, if credited, and if transferred into a work setting, is

compatible with a person who can adapt and manage himself in a work setting.

### ii. 12.04C

For similar reasons, the ALJ must reconsider his analysis of 12.04C. To satisfy 12.04C, the claimant's "mental disorder" must be "serious and persistent," in that the claimant must have a medically documented history of the existence of the disorder over a period of at least two years. There must be evidence of both (i) "Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder"; and (ii) "Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." The ALJ found that Plaintiff does not suffer from marginal adjustment because he can take care of his kids and go out alone. (R. 17). But marginal adjustment asks whether the claimant has the ability to adapt and change, not whether the claimant can follow a routine. Indeed, Listing 12.00G2c provides:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

Thus, for similar reasons the ALJ erred when assessing 12.04B4, the ALJ erred when assessing

12.04C.³ Indeed, the ALJ, without sufficient explanation, imputed Plaintiff's home routine into his ability to adapt and change.

### B. Listing 12.11: Neurodevelopmental Disorders

The ALJ did not consider whether Plaintiff satisfied Listing 12.11, which is relevant to Plaintiff's ADHD, an impairment the ALJ found was severe at step two. Listing 12.11 requires the claimant to satisfy 12.11A and 12.11B, and 12.11B is identical to 12.04B. Thus, the ALJ's decision not to analyze Listing 12.11 is understandable in light of the ALJ's analysis of 12.04B. However, the ALJ's analysis of 12.04B was inadequate. Accordingly, on remand, if the ALJ does not reach the same conclusion with respect to 12.04B, the ALJ must consider Listing 12.11.

### C. Listing 14.09: Inflammatory Arthritis

A claimant is presumptively disabled under Listing 14.09 if he satisfies 14.09A, 14.09B, 14.09C, or 14.09D. Plaintiff challenges the ALJ's analysis of 14.09B, which requires:

> Inflammation or deformity in one or more major joints of an upper or a lower extremity (see 14.00C8) with:
>
> 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

In finding that Plaintiff did not meet 14.09B, the ALJ explained that "the record does not support that the claimant has severe fatigue, fever, malaise, or involuntary weight loss. The claimant at times[] complained of fatigue, but was generally oriented with fair concentration." (R. 15). In making that determination, the ALJ cited the treatment notes of Dr. Mohamed Yosry, who reported that Plaintiff was generally oriented and had fair concentration. (R. 536). The ALJ also cited the

---

³ The Commissioner does not explicitly defend the ALJ's analysis of 12.04C.

progress notes of Dr. Rita Komboz, who indicated that Plaintiff appeared normal neurologically. (R. 370).

The Commissioner defends the ALJ's determination by citing the same evidence. (Opp. Br. at 15). That evidence, the Commissioner says, is substantial evidence supporting the ALJ's decision.

However, the ALJ's decision to credit the above evidence is inconsistent with his decision to discredit similar evidence at step four. At step four, the ALJ assigned "little weight" to a function report prepared by Dr. Yosry because, in finding that Plaintiff is "limited" in memory, Dr. Yosry "did not set forth an explanation or description of the limitations." (R. 22). Appropriate reasoning that might be in the abstract. But the ALJ later credited Dr. Yosry's treatment notes concerning Plaintiffs' orientation and concentration even though those notes provided no greater explanation for his conclusion. (R. 536). Moreover, later in his opinion, the ALJ assigned "minimal weight" to Dr. Komboz because she indicated in her progress notes that she agreed Plaintiff was permanently disabled—a conclusion that only the ALJ could make. (R. 21). He relied on Dr. Komboz's "overstepping" to disregard her medical opinions concerning Plaintiff's arthritis. Yet in the progress notes he favorably relies on, Dr. Komboz also opines that she agrees that Plaintiff is permanently disabled.

The ALJ's inconsistencies are not harmless. As noted above, evidence in the record indicates that Plaintiff, *inter alia*, sleeps for almost 14 hours per day and is depressed. (R. 334–336). The records supporting those findings could, if credited by the ALJ, support a finding that Plaintiff suffers from severe fatigue and malaise. On remand, the ALJ must make specific findings of fact with respect to 14.09B that are consistent with his findings of fact at step four.[4]

---

[4] Plaintiff also argues that the ALJ failed to adequately consider his obesity throughout the step three analysis. (Mov. Br. at 17–20). The Court need not address that question, because it finds the step three analysis deficient in

## IV. CONCLUSION

For the foregoing reasons, the Court VACATES and REMANDS the decision of the Commissioner.  An appropriate order will follow.

Dated: March 16, 2022

*/s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

other ways.  And the ALJ's renewed step three analysis will require him to consider the impact, if any, that Plaintiff's obesity has on the severity of his impairments.